UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **SAMANTHA J. GUILLORY** | NO. _____ |
| **VERSUS** | |
| **THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, PRESIDENT AND CHANCELLOR F.KING ALEXANDER, CHANCELLOR WILLIAM J. NUNEZ, VICE CHANCHELLOR RENEE ROBICHAUX, VICE CHANCELLOR JUDY DANIELS, VICE CHANCELLOR ARLENE C. TUCKER DIVISION HEAD DOTTY MCDONALD, JENNIFER CRESWELL** | JUDGE _____<br><br><br><br><br><br><br><br>MAG. JUDGE _____ |

**CLAIM FOR INJUCTIVE RELIEF AND DAMAGES ARISING FROM DENIAL OF RIGHTS AND DEPRIVATION OF LIBERTY IN VIOLATION OF THE CONSTITUTION AND FOR BREACH OF CONTRACT**

**A. PARTIES**

On the petition of Samantha Guillory, a natural person of full legal age and capacity, who is a citizen of the United States of America and a resident of Evangeline Parish, Louisiana, appearing herein through undersigned counsel, the following is respectfully submitted:

1.

Those made defendants herein include:

The Board of Supervisors, hereinafter referred to as "The Board," of Louisiana State University and Agricultural and Mechanical College, hereinafter referred to as "LSU," which is a body corporate under the provisions of Article VII of the Constitution of Louisiana and Louisiana Revised Statutes 17:3351;

Members of The Board of Supervisors are Ann D. Duplessis, Raymond J. Lasseigne, Robert "Bobby" Yarborough, Scott Ballard, Stanley J. Jacobs, J. Stephen Perry, Scott Angelle, Garret "Hank" Danos, Jim McCrery, Blake Chatelain, James W. Moore, Jr., Ronald R. Anderson, Rolfe McCollister, Jr., Jack E. Lawton, Jr., Lee Mallett, and a University Systems student appointed to the board, who is not known to the plaintiff.

F. King Alexander, President and Chancellor of LSU, who at all times pertinent heretofore has occupied his current position.

William J. Nunez, Chancellor of LSU at Eunice, hereinafter referred to as "LSUE."

Renee Robichaux, Vice Chancellor of Academic Affairs for LSUE.

Judy Daniels, Vice Chancellor of Student Affairs and Enrollment Services at LSUE.

Arlene C. Tucker, Vice Chancellor of Business Affairs for LSUE.

Dotty McDonald, Head of Division of Health Sciences & Business Technology

Jennifer Creswell, LSUE ASN program director and clinical nursing instructor.

All defendants, to the best knowledge and belief of plaintiff, have occupied their respective positions at all times pertinent heretofore. All claims are being brought against all defendants both as individuals and in their respective official capacities agents or employees of the State of Louisiana.

B. JURISDICTION

2.

The jurisdiction of this Court is invoked pursuant to questions of federal law arising under the United States Constitution[1], as well as 42 U.S. Code Section 1983.

3.

Venue is proper in the Western District of Louisiana as a substantial part of the events giving rise to the claim occurred within the territorial limits of the District.

C. FACTUAL BACKGROUND

4.

In the fall of 2012, Mrs. Samantha J. "Sam" Guillory paid tuition in exchange for enrollment in the Associate of Science of Nursing program at Louisiana State University at Eunice, hereinafter "LSUE." During the fall of 2013, as a third semester nursing student, Mrs. Guillory was required by the

---

[1] U.S. CONST. ART. III § 2; U.S. CONST. AMEND. I, V, & XV.

course curriculum to schedule and complete Nursing 2435. Pertinent events occurred during the Fall semester of 2013 and the beginning of Spring semester of 2014.

5.

The course description for Nursing 2435 states, in part:

> Clinical practice component which provides an opportunity for integrating safe and effective care for patients in primary and tertiary care centers experiencing altered psychosocial and physiologic integrity related to altered perceptions of self, others and environment, manifestations of acute and chronic common health problems of oxygenation, nutrition and metabolism.[2]

6.

Mrs. Guillory met the prerequisite requirements for the course and was assigned to a clinical group under the instruction of Jennifer Creswell. Students were provided a syllabus and instructed how to prepare for and participate in clinical sessions on Thursdays and Fridays during the semester on the 4th floor medical-surgical unit at Opelousas General Hospital, hereinafter "OGH," with other times spent at the LSUE campus in a lab setting, preparing to administer treatment to specific patients assigned for clinical days.

7.

Prior to participation in Nursing 2435, Samantha's experiences in the LSUE ASN program had been challenging but rewarding and fair. Though she had failed to satisfactorily complete a written examination course during prior enrollment, she waited a year for reenrollment, and upon doing so, passed all necessary courses identified as prerequisites to the 3rd semester curriculum and was on pace to graduate in the spring of 2014.

8.

Upon interacting with Jennifer Creswell in the context of Nursing 2435, Ms. Guillory's experiences departed radically from the customary student-teacher relationship. Creswell subjected certain students to heightened levels of demand and scrutiny over others, such as, forgiving errors when committed by some students as inherent in the learning process, while using performances of other

---

[2] Plaintiff's Offering A: *LSU EUNICE COURSE SYLLABUS.*

students, particularly Guillory, as grounds to demean, insult, falsely accuse and hastily dismiss, in violation of student rights and the procedures set forth by the University and the department.

9.

On one such occasion, Monday, October 21, 2013, Mrs. Guillory was called into a meeting with Creswell, McDonald, the level coordinator and a graduate level student, Celesta Johnson, for whom Creswell had been acting as a preceptor during the prior week's clinical rotations. At this meeting, Creswell accused Guillory of restarting an intravenous, or "IV," pump and of falsifying hospital documentation by charting an assessment of that patient's I.V. site. Despite lacking personal knowledge of the events, Creswell orally dismissed Guillory from the ASN program.

10.

After Guillory's imploring those present to confirm her statement of the events by contacting the floor nurse at OGH, known only as "Carla," who admitted to restarting the IV pump on the date in question, McDonald interjected to withdraw or overrule the verbal dismissal, pending an investigation into the facts by Creswell. McDonald instructed Guillory that she would remain in the program pending the outcome of the investigation.

11.

The matter was resumed on Wednesday, October 30, 2013, when Guillory was summoned to a meeting with Creswell and the level coordinator. Creswell again orally dismissed Guillory from the ASN program by merely reasserting that Guillory had restarted the IV pump on a patient with an infiltrated IV site during the clinical course on October 17th, despite presenting no new information in support of prior allegations. When Sam again denied the allegation and Creswell called her a "liar," ostensibly relying entirely on the recollection of Celesta Johnson.

12.

In addition to this same allegation of conduct, which not only impugns Guillory's personal character, moral fitness and reputation, but also, if true, constitutes clear violation of the *LSUE Code of Student Conduct*, Creswell asserted additional justification for her conclusion based on clinical

performances that predate the first oral dismissal, but were never discussed with Guillory as a basis for dismissal or in the context of instruction and education.

### D. FORMAL DISMISSAL INITIATING THE APPEAL PROCESS

13.

Guillory first learned of the entirety of the grounds relied upon for dismissal on November 12th via receipt of an unsigned memorandum dated November 1, 2013.[3] In it, Creswell, the named sender, outlined a summary of clinical performances, deeming Guillory's performance amounted to "consistent unsafe clinical practice behaviors." Among the entries contained in the memo are allegations that Guillory failed to identify a patient's elevated International Normalized Ratio, or "INR," on September 26th; as well as a detailed recollection of Creswell's observations of Guillory preparing parenteral medications, which are those administered via syringe, on October 4th.

14.

Guillory adamantly contends that these assertions of fact are patently false and that documentation presented to faculty at LSUE confirms the impossibility of Creswell's accounts. In fact, Guillory referred to documentation showing that the patients INR never rose above 1.28 during the time in question, in direct contradiction to Creswell's allegation that the patient's INR reached 6.4, a point eventually conceded as an error by Creswell.

15.

Likewise, the allegations of improper or slow preparation of parenteral medication for the patient assigned to Sam on October 4th prove false, as this patient was prescribed one oral medication, one topical medication and one medication contained in an IV piggyback. None of these medications require the use of a syringe.

---

[3] Plaintiff's Offering B: *Memo of Dismissal.*

16.

Upon finally having an opportunity to review the criteria for her termination from the program, Guillory was instructed by LSUE personnel that she had a right to appeal the grade and was provided a copy of Policy Statement 8, hereinafter "PS 8," setting forth the appeal procedures available to students, which generally consists of a three step process.[4] In step one, the student and the teacher are encouraged to meet alone for an informal discussion in an effort to resolve the matter by mutual agreement. Considering the hostility, haste and accusatory tone evident in prior meetings with Creswell, while concluding the futility in further attempts to persuade Creswell, Guillory submitted a request to proceed directly to step two of the appeal procedure.

17.

The request was properly directed to Renee Robichaux, Vice Chancellor of Academic Affairs, who granted the request after deliberation with McDonald. Guillory was then instructed by McDonald to make an appointment, at which time Guillory must have completely filled out the PS 8 for McDonald's review. The appeal process would then explain by McDonald, who, as department head, was also charged by the PS 8 with arranging for a meeting between herself, Creswell and Guillory. Step two of the appeal procedure was scheduled for and took place on December 16th. PS 8 operating procedures describe the meeting as, "an informal but candid discussion of the problem in the hope of arriving at a solution."

18.

Sam appeared as scheduled for the step two meeting and was accompanied by her father as her advisor. Students are allowed an advisor, but student advisors are not allowed to speak in the meeting. Also present at the meeting were Judy Daniels, Vice Chancellor of Student Affairs and Enrollment Services at LSUE and both the upper and lower level coordinators. Guillory approached the meeting with the expectation of proceeding in the spirit of openness and optimism embodied by the PS 8 language. Regrettably, the experience failed to meet her expectations.

---

[4] Plaintiff's Offering C: *Policy Statement 8.*

19.

Instead, she found that McDonald acted nothing like a neutral arbitrator, but rather acted to defend and advocate on behalf of Creswell, who rather than relying primarily on prior assertions, peppered Sam with critiques and questions related to performances not outlined in her reasons for dismissal. Guillory perceived being prejudiced by attempts to expand the scope of her criticism, particularly since ample opportunity existed to have addressed these concerns during clinical experiences, in weekly clinical evaluations, and in either of the prior meetings in which she had been abruptly dismissed from the program. Despite the onslaught of new nitpicking, aided and supported by McDonald, Guillory carefully proceeded to refute the statements offered in support of her dismissal by addressing each instance of facts.

20.

First, Guillory dispelled the allegation that she failed to note a patient's elevated INR by referring to documentation that rendered a reading of 6.4 impossible. When confronted with evidence contradicting her account, Creswell did not initially admit error or wrongdoing, but stated that she would have to recheck. Believing that her dismissal was based on the grade criteria and general expectations set forth in the course syllabus under the section entitled, "Evaluation/Grading," Guillory gathered that the outcome of her grade appeal would hinge on whether there had been appropriate grounds for remediation on three occasions.[5]

21.

Guillory proceeded to offer proof that the second allegation of unsafe performance could not have happened as Creswell recalled, namely because the patient in question was not prescribed medication that can be administered with a syringe. In her unsigned declaration offered as supporting evidence for the dismissal, Creswell recalls:

> I watched as the student was very hesitant to open the syringe wrapper, was tentative and unsure as she looked at the vial of medication, set it down, slowly reached for the syringe. Such behavior to perform basic medication skills was very time consuming, and from this observation I

---

[5] See POA: *LSUE COURSE SYLLABUS.*

commented to the student she was very slow in manipulating the items needed to prepare the medication, She was very hesitant in performing the whole process.[6]

In an entry for the week following this critical evaluation, Creswell adds:

> Student sent to LSU Eunice practice lab to practice manipulating and setting up IV tubing, spiking bags, preparing parenteral medications with Mrs. Klumpp. Student was asked to remediate these basic skills based on performance on 10-4-13. The student was to go to the hospital at 11:00am to obtain one patient assignment for Friday October 11, 2013.

After referencing documentation that served to invalidate the statements of fact made by her instructor, Guillory addressed the third and final of the three primary incidents alleged in support of her dismissal.

22.

As to that dispute over who turned on the IV pump for the patient with an infiltrated IV site, Guillory again steadfastly denied ever having restarted the IV pump. Without personal knowledge of the events, Creswell continued to baselessly insist that Guillory lacked any credibility and chose to disregard Sam's account entirely in favor of her own description of Celesta Johnson's memory. Guillory made no speculation as to the discrepancy between her recollection of the events and that of Celesta Johnson, but noted that Johnson was also subject to evaluation by Creswell as a preceptor. When Guillory asked why Ms. Johnson was not present to recite her recollection and resolve any differences between the two, Guillory was flatly told that Ms. Johnson does not want to get involved.

23.

In her best effort to reach the truth as to who restarted the IV pump on the patient with an infiltrated IV site, Guillory implored both Creswell and McDonald, as well as all others present, to seek out the floor nurse, known only as Carla, who was working on the day in question. Carla may confirm that she was in the room with the patient when Guillory arrived with Celesta Johnson, after retrieving supplies to treat and replace the IV site. Carla may also confirm having restarted the IV pump on the patient and at the time in question.

---

[6] See POB: *Memo of Dismissal.*

24.

In reference to this point, McDonald confronted Guillory for having returned to OGH after her dismissal and inquiring with the staff about information related to the date in question.  Guillory denied any wrongdoing and urged that she was simply seeking information to prepare for the step two meeting, hoping that Carla would be able to offer a keen recollection.  McDonald threatened Guillory that she was banned from returning to OGH and if she attempted to return she would not be allowed to continue with step three of the appeal process.

25.

From the onset of step two, Sam sensed the same palpable contempt in the communication of Jennifer Creswell that characterized the manner of instruction she had received all semester.  Aside from lacking professionalism in communication generally, Creswell employed the frequent use of sarcasm and repeatedly scoffed at Sam's attempts to defend her performance and character, even when she offered clear and convincing proof of the veracity of her defenses.  Recognizing that she could do no more to overcome an exceedingly high burden to dissuade Creswell or McDonald from eventual dismissal, she expressed her belief that the decision to dismiss her had been made in haste and she had successfully demonstrated that it was not well founded in fact, nor justified under the evaluation and grading criteria set forth in the course syllabus.

26.

It became apparent that McDonald had prepared in advance to skew the discourse and findings in favor of Creswell and operated on a presumption that instructors possess unfettered discretion, which could not be overcome simply by disproving the thrust of the factual allegations made in support of dismissal. Without any discussion of possible resolutions or things that Sam could do to redeem her standing and continue in school, McDonald took the matter under advisement. On December 23rd, she issued a letter to Mrs. Guillory informing her of the decision to maintain a failing grade.[7]

---

[7] Plaintiff's Offering D: *Letter Affirming Failing Grade.*

27.

In her reasoning McDonald first states that "documentation indicates" student was sent back to the lab for remediation on more than one occasion for having difficulty with IV medications. McDonald never acknowledges or addresses the document that disproves Creswell's claim she was slow in prepping IV medication for a patient on October 4th. She then relies on clinical performance from the week following an oral dismissal by Creswell and mentions performances not alleged in the written reasons for dismissal. Next, she claims Creswell could have sent her back to remediation for the issues with the patient on October 17th, with the infiltrated IV. Again, she never addresses the question of whether Guillory was found to have restarted the IV pump or whether McDonald ever sought out testimony from Carla at OGH.

28.

The letter then shifts to an issue of timeliness of charting nurse's notes. This occurred on October 17th due to Guillory receiving the morning report over 90 minutes behind schedule from OGH staff. Also, McDonald raises the issue of printing drug information versus handwritten notations. Sam explained that she felt that handwriting the drug information assisted her in cognitive retention; however, once she complied with Creswell's insistence on printing, she found the information was more readily accessible and continued to comply thereafter with the dictate. Guillory contends these issues were properly addressed in the appropriate manner within the evaluation process in the weekly clinical course and did not constitute grounds for dismissal, either under the syllabus or in prior statements by Creswell.

29.

McDonald's analysis then returns to the issues involved with care of the patient in room 461 on October 17th, first addressing an episode of Paroxysmal Supraventricular Tachycardia, or "PSVT." This condition, characterized as life threatening, was due to removal of the oxygen supply from the patient's nose. Sam had consistently responded to this by relaying that she learned the patient would remove the tube to go to the bathroom, but she informed the patient of the importance of keeping oxygen tube in place and arranged for a bedside stool pan, which the patient agreed to use. Furthermore, could not be

aware of the dysrhythmia, unless so informed by the floor nurse, who relies on telemetry reports for warnings of dysrhythmia. Fortunately the heartrate elevation up to 140 bpm did not cause the patient to expire.

30.

The next paragraph revisits, "another major issue," the events surrounding the infiltrated IV site and the question of who done it, in reference to restarting the IV pump for the patient in room 461 on October 17th. Notably, McDonald never refers to Celesta Johnson by name, nor does she address whether anyone sought additional testimony from OGH staff, namely Carla. In actuality, McDonald also never explicitly states a finding as to the facts of this incident. Instead, she summarizes only the account as previously explained by Creswell, implying that the limited observations of Creswell and the second hand account of the unnamed graduate student result in an inescapable conclusion that Samantha restarted the IV pump.

31.

Though confounded by the ever fluctuating emphasis on the grounds relied upon to justify her dismissal, Sam was not surprised at the outcome reached by McDonald. It was widely speculated by students in the LSUE nursing community that Creswell and McDonald had a relationship that extended beyond that of professional colleagues. The perception of their amorous affair was so pronounced students were told they could circumvent the protocol for reporting student concerns, which according to the syllabus would have required Guillory to report complaints about Creswell, first directly to Creswell, as instructor, then to Creswell as Program director, followed by McDonald as Division Head. However, when Sam sought guidance on issues in the clinical program the Vice Chancellor, she was rebuked for doing so and the subsequent path to her eventual final dismissal serves as an example of the retaliation that ensued.

32.

Hope still rested for Sam in the form of an appeal panel convened under step three of the PS 8. Upon receipt of the findings at step two, Guillory began preparing her Statement of Appeal. A form came

attached to the copy of the PS 8 originally provided to her by the school, although Sam was improperly required by McDonald to complete the form in advance of step two, the instructions clearly state that it should only be used for step three appeals. Needless to say, the one and one-half letter sized pages did not suffice for space and Sam prepared nine, single-spaced pages, providing factual background and reciting each allegation against her, along with a response. The PS 8 also states that in the case of a student appeal for a hearing panel, upon receipt of the written appeal, the step three administrator must promptly forward a copy of the written appeal to the two employees involved in step two. They, in turn, must promptly reply with individual written statements supporting the action(s) taken in step two.

33.

McDonald complied with this mandate by simply redirecting to Renee Robichaux, the letter previously sent to Guillory.[8] The language of both appears essentially identical; care was not even taken to ensure proper correction of pronouns. More impactful are the flaws in the conclusory logic, specifically the determination that the student demonstrated lack of organization, basic assessment skills, inability to prioritize and deficiency in critical thinking skills. Instead of concurring with the grounds for dismissal, the step two mediator appears to have side-stepped finding of fact on those issues and substituted her own evaluation, for that of the instructor, whilst making conclusions about the student's performance in a clinical setting without ever observing the student perform in the clinical setting. Creswell, on the other hand, did not make any attempt to comply with this requirement, or the Vice Chancellor failed to forward a copy of any such reply to Guillory, as required by PS 8. In any event, Sam never received any further commentary or response from Creswell after the step two meeting.

D. HEARING PANEL DELIBERATIONS AND FINDINGS

33.

Nevertheless, a step three hearing panel was assembled and convened on February 4th, 2014 to hear the student's grade appeal. Guillory arrived with her authorized advisor, her father, who cannot

---

[8] Plaintiff's Offering E: *Response to Request for Hearing Panel.*

address the panel.  Unbeknownst to Sam, McDonald appeared in lieu of Creswell, which did not expect, since McDonald had been characterized as a mediator in step 2 and moreover, because the PS 8 explicitly states that the panel shall hold a hearing with the head of the department, the teacher and the student.  The PS 8 comports with reasonable expectations of due process in this instance, insofar as the credibility of testimony of a witness before a trier of fact can only be assessed when the testimony is presented in some form to the adjudicators.

34.

The members of the committee clearly possessed a different interpretation of Guillory's right to be heard, as they allowed the limited testimony of McDonald and her own to supplant that of both Creswell and Celesta Johnson.  Additionally, they arbitrarily set an unreasonable time limit of 10 minutes for Guillory to present her entire case.  Within these rigid limitations imposed by the panel, Sam recounted the changing rationale expressed as grounds for her dismissal, both prior to and during the process outlined in the PS 8. She insisted that it created an unattainable burden for her to respond completely in preparing and asserting her defenses. Furthermore, she stressed that none of admitted minor errors, constitute grounds for dismissal under either the specific language of the syllabus or the common practices of clinical staff in evaluating clinical students.

35.

Somewhat predictably, the panel disagreed with Guillory, concluding her appeal "has no merit." In a letter to Dr. Renee Robichaux, dated February 6, 2014, the Hearing Panel Chair, Timothy J. Trant, listed several factors considered in reaching the outcome.[9] The first of which is the following:

> 1.     The LSUE course syllabus for NURS2435 for Fall 2013 states on page 5 "the LSU Eunice nursing program faculty reserves the right to recommend termination of a nursing student when health and/or personal conduct require such action."

In citing this language, the appeal panel never examines whether this right authorizes an immediate dismissal versus a right to recommend termination, as the plain language suggests.  The panel also neglects to address the context from which this language was drawn.  The statement does not appear

---
[9] Plaintiff's Offering F: *Hearing Panel Decision.*

anywhere in the section setting forth standards of evaluation and grading. Instead it appears in a wholly separate section of the syllabus addressing ethical standards and behaviors.

36.

The list that directly precedes the quoted statement includes reasons such as cheating or plagiarism as well as other violations of the LSUE Code of Student Conduct. More conspicuously absent from the quoted text is the sentence that immediately follows and completes the block statement:

> A Student "Due Process" procedure is available.

Astoundingly, the words *DUE PROCESS* actually appear in quotation marks on the course syllabus. The context of the provision, especially when read in conjunction with the preceding list, must reasonably require the consideration, if not the conclusion that any recommendation for termination for any of the reasons listed, including when, "health and/or personal conduct requires such action" shall initiate the procedure set forth for accusations of unethical conduct or academic dishonesty.

37.

Had Guillory been dismissed for conduct, substantially greater protections in contesting the claims leveled against her are afforded. As written, the dismissal is couched as a failing grade, therefore requiring the panel to consider the standards for grading and evaluation set forth in the syllabus. The hearing panel decision goes on to state that Guillory was dismissed for "consistent unsafe clinical practice behaviors."

38.

The panel failed to grapple with, much less grasp, the distinction between, "health and/or personal conduct," as described in course syllabus section Roman Numeral V, versus, "non-professional and/or unsafe behavior" as described in the evaluation and grading section of the syllabus. Additionally, they make no mention of the portion in which unsatisfactory performance is defined as:

> A grade of U-(Unsatisfactory) on the Weekly Clinical Evaluation Form means that the specific objective was evaluated. The student did not meet the objective. The performance was not safe, the time frame was unacceptable, and/or the level of competence was unacceptable. **The student must discuss this deficiency with the clinical instructor.** By the end of the semester,

> each objective must be met and maintained at a satisfactory level for the student to receive a Pass (P) on the Final Clinical Evaluation.[10]

Taken in full context, the syllabus conveys a contemplation of the development of satisfactory performance of skills cumulatively over the course of the semester.  Clearly, unsatisfactory and even **unsafe** performance of specific objectives are contemplated as occurring within the scope of the learning process and do not immediately give rise to grounds for dismissal.

39.

Without addressing the relative rights of the student and teacher or establishing clear questions of fact and policy toward which inquiries and deliberations must be directed, the panel exalts the qualifications of Creswell to make "judgments regarding the quality and safety of nursing students." The letter continues in finding Creswell's, "recommendation was in good faith without malicious intent." As stated, this conclusion is based primarily on an examination of weekly clinical evaluations, presumably due to the complete lack of formal response and testimony from the instructor following the conclusion of step two. Clearly, Creswell's absence in no way impaired her credibility.

40.

Interestingly, neither did the admission of an error in the written reasons for dismissal relating to the first incident of alleged unsafe behavior, namely the allegation that Sam failed to note a patient's elevated INR.  Remarkably, the panels rather rudimentary analysis of the factual assertions that originally served as the basis for the dismissal completely failed to specifically address the second incident, wherein Creswell set forth a specific and deliberate recollection of personally observing Sam slowly struggle to remove a syringe from packaging and draw fluids from a vial.  It strains rationality to conceive how these discrepancies bear no relevance to the findings on the merits or to the determination of the relative credibility and motives of the parties.

---

[10] See POA: *LSUE COURSE SYLLABUS.*

41.

In assessing the probative worth of the documentation reviewed in determining the disputed issues of material fact, the panel readily admits to the vagueness of same, which included the written clinical evaluation forms and the allegations set forth in dismissal letter; concluding that there was little documented information to support either perspective. In reference to the final incident that precipitated the failing grade and dismissal from the program, the panel notes that Guillory admitted that she should have reexamined the IV site prior to starting antibiotics and that the timing of her charting entries were not in accordance with best practices of the profession. Nonetheless, she contends that neither of the issues emphasized by the hearing panel would result in a failed clinical class either under the syllabus or in the customary evaluations of clinical students in the group, nor were these issues relied upon as the primary basis for her failing grade and corresponding dismissal.

42.

Another point relied upon by the hearing panel was the incident that occurred with the same patient on the same day, October 17th. The allegation contended Guillory's failure to make reference to an episode of PSVT, and her failure to exercise a heightened level of alertness amounted to unsafe behavior. Sam reiterated her position that in practice, nurses rely on telemetry technicians to monitor heart status and relay alerts to the nursing station. Because the floor nurse received the warning and checked the patient status, without notifying the clinical student assigned to the patient, Guillory had no way of knowing of the episode. However, she did state the interaction with the patient wherein she addressed the cause of the root problem, which was keeping the oxygen hose in place on the patient's nose. She devised a solution that the patient agreed with and implemented the solution.

43.

In a final attempt to resolve the principle dispute remaining in question, related to the same patient on the same day, namely, whether Guillory restarted the IV pump on an infiltrated IV site, the panel states that it can make no conclusion as to the facts in question. Despite this apparently favorable outcome for the accused, the panel continues, saying they "did observe that Ms. Johnson has no apparent

motive for making her statement, while Ms. Guillory has a significant motive for refuting Ms. Johnson's statement." Choosing to use the operative word OBSERVE, despite having elicited no direct testimony, written or oral, from Celesta Johnson, exemplifies the panel's disregard for the essential purpose of due process.

44.

After having failed to appear and establish any one of the three incidents originally used as a basis for dismissal on the claim of demonstrating, "consistent unsafe clinical practice behaviors," one might expect that the instructor would be overruled. Unfortunately for Sam, the panel applied a different standard of review. The panel concluded that because Guillory was informed about the allegations leading to her dismissal and by virtue of, "the very fact that Step Three in the appeal process has been reached," she had been afforded sufficient opportunity to be heard.

45.

The statement of the hearing panel's findings lack substantive discussion of the essential questions presented. Firstly, it begins by citing authority to recommend termination based on personal conduct and/or health reasons, failing to recognize that the employee in the instant case assigned a failing grade resulting in an academic dismissal rather than making a recommendation for termination based on personal conduct. An allegation of unethical conduct cited as the basis for recommending termination through formal charges, as set forth by LSUE policies, requires far greater substantive and procedural due process protections than the Hearing Panel utilized.

46.

Clearly confused by the requirements imposed on the university employee and the inconsistency of Creswell's actions with LSUE policy, the hearing panel provided no real meaningful review in failing to apply an appropriate and reasonable standard to the events in question. In reviewing formal allegations of academic or general misconduct, rights guaranteed to students include, the right to continue to attend class under the presumption of innocence, the full support of the University in compelling favorable

witnesses to appear, a public hearing, confrontation of accusers, and reasonable cross-examination of witnesses.

**D. CLAIM SUMMARY**

47.

These events occurred in the context of a toxic environment created by the Nursing Program Director among the students assigned to her clinical course. Student fear and anxiety so pervade the culture that, in multiple instances, Jennifer Creswell prescribes beta blockers to her otherwise healthy students. Students, Such as Samantha Guillory are subjected to bullying tactics, reprisal and intimidation in violation of the LSUE Student Handbook along with the substantive and procedural due process rights it protects. Among the safeguards, students have, "the right to be informed of LSU Eunice's regulations, rules, and policies," and, "the right to know the grading system used in each class… as well as a review of the method by which the grade was determined."

48.

Whether the pattern of wrongful actions against Guillory derive from her political and religious beliefs, Cajun ethnicity, sex, age, or marital status, or merely conflicting personalities, LSUE failed to adhere to existing policy. The actions and omissions of the defendants deprive Guillory of the time, energy and expense related to her position within the program prior to her dismissal. Also, upon information and belief, the disposition of the matter within the LSU system as an academic dismissal may bar Guillory from enrollment in another accredited program within the State or gaining certification as an RN upon attaining an accredited degree, effectively denying her the liberty to pursue her chosen profession.

49.

Defendants to this action, an in official capacity as agents or employees of the State of Louisiana neglected explicit and implied duties to ensure ethical, fair and equal treatment of all students. Samantha Guillory endured unprofessional and unsubstantiated attacks on her character and reputation by an

employee of LSUE. In total disregard of policy set forth to address the severity and factual nature of such allegations, LSUE provided minimal standards and safeguards in reviewing the events leading up to the eventual dismissal.

50.

At all pertinent times throughout, numerous employees had opportunity to note the inadequacy of the process applied in handling the dispute, including the LSUE chancellor, concluded the matter by finding no "serious procedural error" or "… abuse of discretion."[11] For these reasons, it is alleged LSU failed to properly inform and train current and prospective employees on essential subjects such as, but not limited to ethics in professionalism and principles underlying the universities own regulations in regards to the rights of students. Similarly, LSU erred in handling, a widespread perception, whether real or imagined, among students of bias within the ranks of faculty members, which requires a deliberate and careful response by the University to address the possibility of preferential treatment and dispel any appearance of favoritism.

51.

The actions of the clinical instructor, in defaming and tormenting her student, not only violate the teacher's duty to meaningful and deliberate consideration of the merits related to dismissal for academic failure, they go well beyond expectations of the limitations of academic freedom and impinge upon the rights and liberties of the student. Equally, the Department Head, charged with mediating a grade appeal, cannot reasonably believe that it is within their authority to deny a student's right to seek out the truth or threaten the denial of the remainder of the University's appeal procedures.

### D. PRAYER FOR RELIEF

In petitioning for relief related to the claims set forth herein, Samantha Guillory, through undersigned counsel, prays that, after due proceedings, this Court grant favorable judgment against defendants together, severally or individually; personally or in an official capacity as an officer or agent

---

[11] Plaintiff's Offering G: *Final Termination Letter.*

of the State of Louisiana, where appropriate, include, but not be limited to the following, together and in the alternative, Signing of an Order of Annulment, ordering specific performance, awarding damages monetary damages as recompense or any and all appropriate legal and equitable relief.

                RESPECTFULLY SUBMITTED:
                FRANCIS JAMES BENEZECH, II

By:    s/ **<u>FRANCIS JAMES BENEZECH, II</u>**
       Law Office of Francis James Benezech, II
       112 Oil Center Dr. Suite M
       Lafayette, LA 70503
       *Tel:*   (337)504-4915
       *Fax*:   (337)205-6955
       FJB2LAW@gmail.com
       LA Bar Roll # 32337